**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**LILIA RODRIQUEZ,**

    **Plaintiff,**

v.                                          Case No.  8:05-cv-808-T-TBM

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

## O R D E R

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments.  For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was 45 years of age at the time of her administrative hearing.  She stands 4', 11" tall and weighed 160 pounds.  Plaintiff has a 9th grade education.  Her past relevant work was as a packer, sewing machine operator and harness assembler.  Plaintiff applied for disability benefits and Supplemental Security Income payments in October 2002, alleging disability as of May 7, 2002, by reason of back pain and an inability to sit and stand too much without pain.  The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  In essence, Plaintiff claimed that she could no longer work at any job

because of pain in her lower back and swelling and numbness in her right leg. Surgery has not been recommended for her back, but after a slip and fall in 2002, surgery of the cervical spine was recommended. Her main problem is with her lower back and leg. She takes Tylenol, aspirin, and Advil for her pain and she has a TENS unit. She has also had adjustments to her cervical spine and injections in the collar and lower back, but they have not helped much. Plaintiff describes the problems with her right leg as numbness, tingling, and swelling. The swelling occurs every day and she lies down and elevates her leg for relief. When she stands, she stands on her left foot and leg. She has used a cane since her slip and fall and it helps with the pain when she walks. Plaintiff indicated that she has not had much medical treatment for her back because she was told Medicaid would not cover it due to her pending slip and fall case.

Plaintiff also complained that she gets "a little numb" in her arms and her fingers, which decreases her ability to grip objects. The problem is worse on her left side. Plaintiff is right- handed. According to Plaintiff, she experiences the numbness on a daily basis and nothing in particular brings it on. Also, Plaintiff experiences daily headaches, which sometimes last all day. She takes aspirin or Tylenol and falls asleep. She also suffers high blood pressure which is treated by medication.

Plaintiff described a very limited daily regimen. She tries to walk at home but mostly she lies in bed and watches television with her daughter. Her husband does the chores, although she sometimes helps with the dishes and she occasionally goes to the store with her husband. Plaintiff testified she can walk maybe a block, stand thirty to forty-five minutes, and sit for thirty to forty minutes before her lower back hurts. She indicated she is incapable of

work because sitting all day induces lower back pain or lifting objects even less than ten pounds causes hand numbness.  See Plaintiff's testimony (R. 282-302).

The ALJ also took testimony form Allen Freeman, a vocational expert (hereinafter "VE").  Assuming an individual with limited education and the capacity for light exertional work with restrictions for occasional climbing, balancing on even surfaces, stooping, kneeling, crouching, and crawling and no climbing ladders, scaffolds, ropes, or exposure to unprotected heights, the VE testified that such person could perform work such as sewing machine operator and agricultural sorter.  If additional limitations were imposed such that the person would need a sit-stand option and would be limited to walking only one block at a time and would need to lie down most of an eight-hour workday, no jobs would be available.  See VE's testimony (R. 302-05).

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of June 30, 2004, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease of the cervical spine and lumbar bulging disc, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff was not disabled because she could perform her past relevant work.  (R. 20-27).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

3

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

4

supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) In assessing the claimant's credibility, the ALJ used legally improper or factually inaccurate reasons to find the claimant's allegations not to be credible;

(2) The ALJ improperly attributed little weight to Dr. Kalin's treating medical opinion without showing "good cause," and also improperly accorded great weight to the opinions of nonexamining medical reviewers; and

(3) The ALJ provided an incomplete hypothetical question to the VE that did not adequately incorporate the claimant's limitations.

Because Plaintiff's second claim mandates reversal, it is the only one discussed. By this claim, Plaintiff argues that the ALJ failed to demonstrate adequate cause for rejecting the

opinion of her treating physician, David Kalin, M.D.  In doing so, Plaintiff asserts that the ALJ failed to consider (1) the nature, extent, and length of her treatment relationship with Dr. Kalin, (2) whether Dr. Kalin was a specialist, or (3) that the neurosurgical examination performed by Larry Horvath, D.O., was essentially consistent with Dr. Kalin's assessment.  Plaintiff also suggests that the ALJ improperly found there were insufficient objective findings to account for the restrictions identified by Dr. Kalin, and she questions certain of the ALJ's findings based on relevance and his reliance on a consulting opinion that he did not credit.  Finally, Plaintiff contends that the ALJ improperly relied on the opinions of two nonexamining doctors.

The Commissioner initially responds by noting that Dr. Kalin did not state that Plaintiff was disabled.  The Commissioner then urges that the limitations identified by Dr. Kalin are, at the very least, inconsistent with Plaintiff's allegations, and she notes the ALJ's reliance on the discrepancy between Dr. Kalin's conclusions and the findings of consultative examiner R. Krishna Moorthy, M.D.  Lastly, the Commissioner summarily concludes that because the ALJ properly rejected Dr. Kalin's opinion on the basis of Dr. Moorthy's findings, the ALJ was free to adopt the opinions of the nonexamining, state agency doctors.

It is well established that when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.[1]  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v.

---

[1] A similar preference for the opinions of treating physicians is found in the Commissioner's regulations.  See 20 C.F.R. §§ 404.1527, 416.927.  Treating sources are given more weight because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of a claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative

6

Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985). Good cause has been found to exist when the (1) treating physician's opinion was not bolstered by the evidence, (2) evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical record. Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at 1440). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor, 786 F.2d at 1053.

The medical record reflects that Dr. Kalin[2] treated Plaintiff on at least six occasions between May 13, 2002, and September 19, 2002. See (R. 202-22). On September 19, 2002, Dr. Kalin opined that Plaintiff was at maximum medical improvement and had a permanent injury resulting in a permanent functional impairment rating of 20% to the body as a whole as a result of her slip and fall in May 2002. (R. 203A-04). He opined further that Plaintiff should avoid repetitive, strenuous or sudden movement of the neck, right shoulder, arm and hand; bending, twisting, prolonged standing or walking for longer than 15-20 minutes; lifting

---

examinations or brief hospitalizations. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If a treating source's opinion on the nature and severity of an impairment is well-supported by objective evidence and is not inconsistent with the other substantial evidence in the record, the ALJ is to give it controlling weight. Id. When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the medical evidence supporting the opinion, the consistency with the record as a whole, the doctor's specialization, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).

[2]In addition to being a medical doctor and having a Master's degree in public health, Dr. Kalin lists the following additional credentials: Fellow American Academy of Family Physicians, Certified in Family Practice (B.C.F.P.), Fellow American Academy of Disability Evaluating Physicians, and Certified Independent Medical Examiner. See, e.g. (R. 222).

greater than 5 pounds; climbing stairs; sitting for longer than 30 minutes without a break and any and all other activities which may aggravate her underlying condition. (R. 204). Dr. Kalin also expressed that Plaintiff may benefit from vocational rehabilitation and should undergo a functional capacity evaluation prior to beginning any gainful employment. Id. The ALJ gave "little weight" to Dr. Kalin's assessment of Plaintiff's limitations, reasoning that:

> Dr. Kalin discharged the claimant from treatment after only four months and stated that she had only a 20% impairment. His own treatment notes do not contain objective findings to account for the severe restrictions he notes above, including a limitation of lifting only five pounds, inability to stand longer than fifteen to thirty minutes, and inability to sit longer than thirty minutes. Dr. Moorthy's examination also showed no evidence to support such limitations. Significantly, Dr. Kalin stated that the claimant may benefit from vocational rehabilitation and recommended a functional capacity evaluation prior to beginning any gainful employment. This indicates that he believes the claimant is capable of performing some type of gainful employment. Finally, Dr. Kalin discharged the claimant from treatment, indicating that she was well enough to not require regular treatment.

(R. 25).

Upon careful consideration, I find that the reasons provided by the ALJ for rejecting Dr. Kalin's assessment fail to demonstrate the requisite good cause required for doing so. As for the ALJ's reliance on certain of Dr. Kalin's statements, I fail to see how the doctor's release of Plaintiff from treatment after only four months with a 20% total body disability is inconsistent with the doctor's functional capacity assessment (which, as the Commissioner points out, is not equivalent to a statement of disability), and ALJ does not explain why he finds it inconsistent. To the extent the ALJ thought that it reflected the view that Plaintiff was "well enough to not require regular treatment," a fair reading of Dr. Kalin's last treatment record reveals otherwise. Indeed, the doctor recommended Plaintiff continue a number of

8

therapeutic measures on her own. See (R. 204). Likewise, I do not find Dr. Kalin's assessment inconsistent with his statement that Plaintiff may benefit from vocational rehabilitation and recommendation that she undergo a functional capacity evaluation before returning to any type of gainful employment, and the ALJ provides no rationale persuading me otherwise. To the extent that the ALJ reads Dr. Kalin's statement as indicating that Plaintiff may be capable of returning to some type of gainful employment, I agree. Nonetheless, I do not find it inconsistent with the doctor's assessment of Plaintiff's functional limitations. Rather, it appears that the ALJ misinterpreted Dr. Kalin's assessment as the equivalence of disability statement, which the Commissioner and I both dispute. Further, it is worth noting that the Commissioner does not urge that these reasons demonstrate good cause for rejecting the doctor's opinion or that they bolster the ALJ's determination.

Next, the ALJ's finding that Dr. Kalin's treatment notes fail to substantiate his restrictions is not substantially supported by the record. Notably, Dr. Kalin's records reflect a thorough review of objective test results that support his assessment. For example, MRIs of Plaintiff's cervical spine and lumbar spine revealed three bulging discs at L3-4, L4-5, and L5-S1 and a right paracentral disc protrusion at the C5-6 level with cord impingement and right neural foraminal stenosis and spurring. (R. 211, 217). Testing ordered as a result of Dr. Kalin's neurological and neurosurgical evaluations indicated severe denervation in Plaintiff's right S1 innervated muscles (right leg) and an absent H reflex in the same. (R. 158-59). Further, on examination, Dr. Kalin repeatedly noted palpable tenderness along the right paracervical muscles at C6-7 with limited range of motion, lower palpable tenderness of the lumbosacral junction on the right with marked paralumbar hypertonicity and limited range of motion, and decreased sensation along the right L3-4 dermatome. See, e.g., (R. 202, 209, 213,

215, 221). He also noted slight diffuse diminution of sensation (right extremity) and slight weakness of grip strength compared to the left. (R. 202). Thus, the treatment notes do reveal objective findings to account for the restrictions and the ALJ's conclusion to the contrary is clearly incorrect.

Further, absent competent medical evidence to the contrary, the ALJ was in no position to ignore the limitations or impose his own view of the same. In this regard, I cannot agree that Dr. Moorthy's findings (or lack thereof) provide adequate cause to reject Dr. Kalin's assessment. Dr. Moorthy examined Plaintiff on one occasion in January 2003 upon request of the Office of Disability Determinations. Although he acknowledged the results of the MRI of Plaintiff's lumbosacral spine and x-ray of Plaintiff's cervical spine, he overlooked and/or failed to discuss the results of the more revealing cervical MRI or the NCV and EMG studies confirming S1 radiculopathy. While his physical examination of Plaintiff revealed only limited restrictions in the area of the lumbar spine, the doctor did not provide a statement pertaining to Plaintiff's functional capacity. Further, while the essentially normal examination is inconsistent with Dr. Kalin's restrictions, it is also inconsistent with the objective test results of record and the findings of other examining doctors of record, a fact overlooked by the ALJ. Of note, the findings documented by Dr. Rosanna Garner, a consulting neurologist, and Dr. Larry D. Horvath, a consulting neurosurgeon, are substantially more in line with the findings and assessment of Dr. Kalin than with the findings of Dr. Moorthy. Although neither of these doctors addressed Plaintiff's functional capacity, Dr. Garner noted an antalgic gait, 4/5 muscle strength, that Plaintiff's right calf was 1 cm smaller than the left and had decreased tone, pinprick and light touch testing were diminished over the right C5 dermatome in the upper extremities, painful range of motion in the neck with spasms noted, pain on range of

motion in the back with spasms noted, a positive straight leg raise on the right, and S1 radiculopathy as revealed by EMG studies. (R. 137-38). Dr. Horvath noted considerable paravertebral tenderness diffusely in the cervical and upper dorsal region and marked restricted range of motion in flexion, extension, and side bending. (R. 205). When this record is considered as a whole, Dr Moorthy's conclusions are the inconsistent ones. Under the regulations, the findings of these examining doctors should have been credited over those of Dr. Moorthy as Drs. Garner and Horvath are neurological specialists and Dr. Moorthy specializes in internal medicine and cardiology. In sum, Dr. Moorthy's lack of physical findings did not provide substantial evidence on which to base the ALJ's rejection of Dr. Kalin's opinion. Further, the opinions of the reviewing, nonexamining doctors, standing alone, cannot provide the good cause required to reject a treating doctor's opinion.[3] Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).

Because there was not adequate cause for the ALJ to discount Dr. Kalin's assessment of Plaintiff's functional capacity, his conclusions, as a matter of law, are accepted as true. See MacGregor, 786 F.2d at 1053. However, I cannot conclude that the conclusions require a finding of disability or that the case must be reversed for an award of benefits. Upon review of Plaintiff's descriptions of her past work, it is unclear whether such jobs would allow a sit/stand option and require lifting or carrying less than five pounds. Further, the availability of other work to the Plaintiff, if any, has not been adequately addressed with the VE. Consequently, remand for further development of the record is required. The ALJ may wish

---

[3]Indeed, opinions of nonexamining doctors, when contrary to those of examining doctors are entitled to little weight. See Lamb, 847 F.2d at 703 (quoting Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987)).

11

to consider Dr Kalin's recommendation that a functional capacity evaluation be obtained before addressing the matter further with the VE.

In light of this conclusion, Plaintiff's other claims need not be addressed.  See Jackson v. Bowen, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).  On remand, however, the ALJ should again evaluate the Plaintiff's subjective complaints in light of the applicable standard with particular attention being paid to the functional limitations she complains of as a consequence of her pain in light of the medical record.[4]

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the

---

[4]The failure of Plaintiff to exhibit facial gestures or grimaces of pain during the hearing and a lack of treatment are not necessarily sufficient reasons to discredit a claimant's subjective complaints.  See Wilson v. Heckler, 734 F.2d 513 (11th Cir.1984); see also SSR 96-7p, 1996 WL 374186, * 7 (S.S.A.) (providing that an ALJ may not draw any inferences about a claimant's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that Plaintiff may provide, or other information in the case record, that may explain the infrequent or irregular medical visits or failure to seek medical treatment).  Additionally, a lack of treatment is not necessarily a sufficient reason to discredit a claimant's subjective complaints.  See SSR 96-7p, 1996 WL 374186, * 7 (S.S.A.) (providing that an ALJ may not draw any inferences about a claimant's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that Plaintiff may provide, or other information in the case record, that may explain the infrequent or irregular medical visits or failure to seek medical treatment).

Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 11th day of September 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record